UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JANET M. LAPORTE,

        Plaintiff,

v.                                                                                          Case No. 1:15-cv-456
                                                                           Hon. Ray Kent

COMMISSIONER OF SOCIAL
SECURITY,

        Defendant.
_____/

**OPINION**

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of the Social Security Administration (Commissioner) which denied her claim for disability insurance benefits (DIB) and supplemental security income (SSI).

Plaintiff alleged a disability onset date of March 25, 2011. PageID.263. She identified her disabling conditions as a pinched nerve, herniated disc, degenerative disc disease, depression and asthma. PageID.267. Prior to the alleged disability onset date, plaintiff had previous employment as a child attendant care worker, machine tender, cashier, cleaner and general laborer. PageID.95, 268. An administrative law judge (ALJ) reviewed plaintiff's claim *de novo* and entered a written decision denying benefits on December 5, 2013. PageID.47-59. This decision, which was later approved by the Appeals Council, has become the final decision of the Commissioner and is now before the Court for review.

## I. LEGAL STANDARD

This Court's review of the Commissioner's decision is typically focused on determining whether the Commissioner's findings are supported by substantial evidence. 42 U.S.C. §405(g); *McKnight v. Sullivan*, 927 F.2d 241 (6th Cir. 1990). "Substantial evidence is more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Secretary of Health & Human Services*, 25 F.3d 284, 286 (6th Cir. 1994). A determination of substantiality of the evidence must be based upon the record taken as a whole. *Young v. Secretary of Health & Human Services*, 925 F.2d 146 (6th Cir. 1990).

The scope of this review is limited to an examination of the record only. This Court does not review the evidence *de novo*, make credibility determinations or weigh the evidence. *Brainard v. Secretary of Health & Human Services*, 889 F.2d 679, 681 (6th Cir. 1989). The fact that the record also contains evidence which would have supported a different conclusion does not undermine the Commissioner's decision so long as there is substantial support for that decision in the record. *Willbanks v. Secretary of Health & Human Services*, 847 F.2d 301, 303 (6th Cir. 1988). Even if the reviewing court would resolve the dispute differently, the Commissioner's decision must stand if it is supported by substantial evidence. *Young*, 925 F.2d at 147.

A claimant must prove that he suffers from a disability in order to be entitled to benefits. A disability is established by showing that the claimant cannot engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. *See* 20 C.F.R. §§ 404.1505 and 416.905; *Abbott v. Sullivan*, 905

F.2d 918, 923 (6th Cir. 1990). In applying the above standard, the Commissioner has developed a five-step analysis:

> The Social Security Act requires the Secretary to follow a "five-step sequential process" for claims of disability. First, plaintiff must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. Second, plaintiff must show that she suffers from a "severe impairment" in order to warrant a finding of disability. A "severe impairment" is one which "significantly limits . . . physical or mental ability to do basic work activities." Third, if plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, plaintiff is presumed to be disabled regardless of age, education or work experience. Fourth, if the plaintiff's impairment does not prevent her from doing her past relevant work, plaintiff is not disabled. For the fifth and final step, even if the plaintiff's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that plaintiff can perform, plaintiff is not disabled.

*Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001) (citations omitted).

The claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work through step four. *Jones v. Commissioner of Social Security*, 336 F.3d 469, 474 (6th Cir. 2003). However, at step five of the inquiry, "the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile." *Id.* If it is determined that a claimant is or is not disabled at any point in the evaluation process, further review is not necessary. *Mullis v. Bowen*, 861 F.2d 991, 993 (6th Cir. 1988).

"The federal court's standard of review for SSI cases mirrors the standard applied in social security disability cases." *D'Angelo v. Commissioner of Social Security*, 475 F. Supp. 2d 716, 719 (W.D. Mich. 2007). "The proper inquiry in an application for SSI benefits is whether the

3

plaintiff was disabled on or after her application date." *Casey v. Secretary of Health and Human Services*, 987 F.2d 1230, 1233 (6th Cir. 1993).

## II. ALJ'S DECISION

Plaintiff's claim failed at the fourth step of the evaluation. At the first step, the ALJ found that plaintiff had not engaged in substantial gainful activity since the alleged onset date of March 25, 2011, and that she meets the insured status requirements of the Act through December 31, 2016. PageID.49. At the second step, the ALJ found that plaintiff had severe impairments of status-postcervical fusion with cervical spondylosis, cervical radiculopathy, mild lumbar degenerative changes, and asthma. PageID.50. At the third step, the ALJ found that plaintiff did not have an impairment or combination of impairments that met or equaled the requirements of the Listing of Impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1. PageID.52.

The ALJ decided at the fourth step that:

> [T]he claimant has the residual functional capacity to perform a range of light work as defined in 20 CFR 404.1567(b) and 416.967(b) of the Regulations. Claimant is able to lift and carry up to twenty pounds occasionally and ten pounds frequently. She can stand or walk for a total of six hours and sit for a total of six hours during an eight-hour workday, with normal breaks. She cannot use ladders, ropes, or scaffolds. She can perform less than frequent use of ramps and stairs, and less than frequent balancing, stooping, kneeling, crouching, and crawling. Bilateral handling and fingering is limited to frequently. Claimant must avoid concentrated exposure to extremes of cold, vibration, fumes, dusts, gases, odors and poor ventilation and to hazards such as unprotected heights and dangerous moving machinery.

PageID.52-53. The ALJ found that plaintiff could perform her past relevant work as a machine tender and child attendant worker, because such work did not require the performance of work-related activities precluded by her residual functional capacity (RFC). PageID.58. Accordingly, the ALJ determined that plaintiff has not been under a disability, as defined in the Social Security Act,

from March 25, 2011 (the alleged onset date) through December 5, 2013 (the date of the decision). PageID.59.

### III.   ANALYSIS

Plaintiff has raised two issues on appeal.

**A.   The ALJ erred by failing to include limitations regarding overhead lifting in the RFC when the ALJ gave the source of the opinion great weight.**

The ALJ assigned great weight to the opinion of non-examining physician Dinesh Tanna, M.D. because it was well supported by the record. PageID.57. The ALJ noted that the doctor's "[o]bjective findings document a stable appearance of the cervical spine following surgery, limited degenerative changes of the lumbar spine, and preserved motor strength (with some reduction at 4/5 in the upper extremity and shoulder girdle)." *Id.* In this regard, Dr. Tanna determined that plaintiff had limited "left overhead" and "right overhead" reaching. PageID.122.

Plaintiff points out that although the ALJ adopted Dr. Tanna's opinion, the bilateral overhead lifting restriction does not appear in the RFC determination. Although plaintiff's stated error involves the RFC, her argument addresses the sufficiency of the hypothetical question posed to the vocational expert (VE). Plaintiff's Brief (docket no. 14, PageID.898-899). To support a finding that a claimant can perform his or her past relevant work, the Commissioner's decision must explain why the claimant can perform the demands and duties of the past job as actually performed or as ordinarily required by employers throughout the national economy. *See Studaway v. Secretary of Health & Human Services*, 815 F.2d 1074, 1076 (6th Cir.1987); 42 U.S.C. § 423(d)(2)(A) ("[a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot,

5

considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy"). While an ALJ may use a VE's services in determining whether a claimant can perform his past relevant work, *see* 20 C.F.R. §§ 404.1560(b)(2) and 416.960(b)(2) (a VE "may offer relevant evidence within his or her expertise or knowledge concerning the physical and mental demands of a claimant's past relevant work, either as the claimant actually performed it or as generally performed in the national economy"), a VE's testimony is not required until step five of the sequential analysis, *see Banks v. Massanari*, 258 F.3d 820, 827 (8th Cir.2001).

When the ALJ obtains vocational evidence through the testimony of a VE, the hypothetical questions posed to the VE must accurately portray the claimant's physical and mental limitations. *See Webb v. Commissioner of Social Security*, 368 F.3d 629, 632 (6th Cir. 2004); *Varley*, 820 F.2d at 779. However, a hypothetical question need only include those limitations which the ALJ accepts as credible. *See Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990). Here, the ALJ considered the VE's testimony in determining that plaintiff could perform her past relevant work as a machine tender and child attendant worker. PageID.58. In the first hypothetical question posed to the VE, the ALJ included the limitations set forth in the RFC as well as an additional limitation of "no overhead reaching." PageID.95-96. Even with this additional limitation, the VE testified that plaintiff could perform her past relevant work as a child attendant care worker and a machine tender. PageID.95-96. Although the ALJ failed to include the overhead lifting restriction in the RFC, this failure amounted to harmless error. Even if the ALJ had included the overhead lifting restriction in the RFC determination, the result would not change because the vocational evidence (i.e., the VE's testimony) established that this restriction would not preclude

6

plaintiff from performing her past relevant work. "No principle of administrative law or common sense requires [a reviewing court] to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result." *Kornecky v. Commissioner of Social Security*, 167 Fed. Appx. 496, 507 (6th Cir. 2006), quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir. 1989). Accordingly, plaintiff's claim of error will be denied.

> **B.     The ALJ failed to properly weigh the opinions of OTR Rounds, PA-C Hull, Doctor Javery, Doctor Seledotis, Dr. Sigelko, Dr. Mulder, and LLP Bush.**
>
> **1.     Opinion of Dr. Mulder and LLP Bush**

Plaintiff contends that the ALJ failed to consider the medical opinions of Dennis L. Mulder, Ed.D. and Allison Bush, MS, LLP. Plaintiff is referring to a "Psychiatric/Psychological Medical Report" dated January 17, 2013. PageID.598.[1] Contrary to plaintiff's contention, the ALJ considered this opinion which was identified as Exhibit 13F, observing that the "January 2013 consultative psychological evaluation" which "yielded a diagnosis of a depressive disorder, not otherwise specified, and dependent personality disorder traits," with a fair prognosis, and GAF values of 55 to 60 which "suggested moderate symptoms or difficulties in social or occupational functioning." PageID.50-52, 598-602.

> **2.     Opinion of Barbara Rounds**

The record reflects that plaintiff underwent cervical surgery on October 14, 2011. PageID.53. An MRI from November 28, 2011 indicated a fusion from C-5 through C-7 without evidence of complication. *Id.* An MRI of the lumbar spine from August 2013 showed very minimal

---

[1] The Court notes that while this document is referred to as a "psychiatric/psychological" report, it was not prepared by a psychiatrist.

7

degenerative changes with no significant spinal canal narrowing, no significant foraminal narrowing, and no impingement of the neutral elements. PageID.54. In September 2013, Barbara Rounds, an occupational therapist, examined plaintiff and issued an RFC evaluation. PageID.810-819.

As a physical therapist, Ms. Rounds is not an acceptable medical source under 20 C.F.R. §§ 404.1513(a) and 416.913(a) (defining acceptable medical sources as licensed physicians, licensed or certified psychologists, licensed optometrists (for establishing visual disorders only), licensed podiatrists (for establishing impairments of the foot, or foot and ankle only), and qualified speech-language pathologists (for establishing speech or language impairments only). As the Sixth Circuit explained:

> Section 404.1513 establishes two categories of medical evidence, "acceptable medical sources" and "other sources." Generally speaking, "acceptable medical sources" are licensed physicians and psychologists. 20 C.F.R. § 404.1513(a). The regulations establish the weight or deference that must be given to the opinion of an acceptable medical source depending on whether it is a "treating source," a "non-treating (but examining) source," or a "non-examining source." *Smith v. Comm'r of Social Sec.*, 482 F.3d 873, 875 (6th Cir.2007). "Other sources" is everyone else, including nurse practitioners, physician's assistants, and therapists. 20 C.F.R. § 404.1513(d)(1). More specifically, nurse practitioners, therapists, and the like are "non-acceptable medical sources." *See id.* The opinion of a "non-acceptable medical source" is not entitled to any particular weight or deference – the ALJ has discretion to assign it any weight he feels appropriate based on the evidence of record. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 530 (6th Cir.1997); *Engebrecht v. Comm'r of Soc. Sec.*, 572 Fed.Appx. 392, 397-98 (6th Cir.2014).

*Noto v. Commissioner of Social Security*, 632 Fed. Appx. 243, 248-49 (6th Cir. 2015). Nevertheless, Social Security Ruling (SSR) 06-3p provides that opinions from other medical sources, such as nurse practitioners, physicians' assistants and therapists "are important and should be evaluated on key issues such as impairment severity and functional effects, along with other relevant evidence in the file." *See* SSR 06-3p. *See also* 20 C.F.R. § 402.35(b)(1) (SSR's "are binding on all

8

components of the Social Security Administration" and "represent precedent final opinions and orders and statements of policy and interpretations" adopted by the agency); *Noto*, 632 Fed. Appx. at 249 ("Social Security Ruling 06-03p elaborates further as to how the ALJ should treat evidence from a non-acceptable medical source").

The ALJ addressed Ms. Rounds' RFC evaluation as follows:

> I assign no weight to the September 2013 opinion statement of occupational therapist Barbara Rounds, OTR/L, in exhibit 23F. This statement is from an "other" source who examined the claimant on a single occasion. Ms. Rounds opined the claimant could work less than 8 hours, performing sitting tasks 2 hours a day and standing and walk less than 2 hours a day, required unscheduled work breaks, and could rarely lift 5 pounds, among other limitations. The extreme nature of these limitations is out of proportion to the objective findings of mild degenerative changes and almost normal strength on physician examinations and essentially normal neurological findings.
>
> \*     \*     \*
>
> Exhibit 23F is completely inconsistent with the medical evidence of record. The surgeon (Seledotis) indicated that the MRI after the surgery looked good. There is only mild spondylosis and degenerative lumbar changes and only mild cervical radiculopathy. There is a reduction of cervical spine movement; however, the extremities have generally normal range of motion and strength. On this basis, I conclude that the opinion statement in exhibit 23F is wholly inconsistent with the medical evidence of record; I reject exhibit 23F.

PagID.57-58.

Here, the ALJ decided to give no weight to the extreme limitations set forth in the Rounds' RFC evaluation because the limitations were not supported by substantial evidence, i.e., the mild spondylosis, mild degenerative lumbar changes, and mild cervical radiculopathy reflected in the record. *Id.* The ALJ considered the RFC evaluation as required under the regulations. Accordingly, plaintiff's claim of error will be denied.

### 3. The Physician Reviews of Ms. Rounds' RFC evaluation

In presenting the medical evidence, plaintiff sought to transform Ms. Rounds' RFC evaluation into a treating physician's opinion by submitting brief statements from treating physicians indicating that they agreed with Rounds' opinion. Such statements were submitted by Dr. Javery (Exh. 25F) (PageID.854), Dr. Sigelko (Exh. 26F) (PageID.856), Ms. Hull (Exh. 26F) (PageID.856)[2], and Dr. Seledotis (Exh. 27F) (PageID.858).

A treating physician's medical opinions and diagnoses are entitled to great weight in evaluating plaintiff's alleged disability. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001). "In general, the opinions of treating physicians are accorded greater weight than those of physicians who examine claimants only once." *Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997). "The treating physician doctrine is based on the assumption that a medical professional who has dealt with a claimant and his maladies over a long period of time will have a deeper insight into the medical condition of the claimant than will a person who has examined a claimant but once, or who has only seen the claimant's medical records." *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994). *See* 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("Generally, we give more weight to opinions from your treating sources, since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations").

---

[2] The Court notes that Ms. Hull, a physicians assistant, is not a treating physician and cannot give an opinion as an acceptable medical source. *See* 20 C.F.R. §§ 404.1513(a) and 416.913(a).

Under the regulations, a treating source's opinion on the nature and severity of a claimant's impairment must be given controlling weight if the Commissioner finds that: (1) the opinion is well-supported by medically acceptable clinical and laboratory diagnostic techniques; and (2) the opinion is not inconsistent with the other substantial evidence in the case record.  *See Gayheart v. Commissioner of Social Security*, 710 F.3d 365, 375 (6th Cir. 2013).  Finally, the ALJ must articulate good reasons for not crediting the opinion of a treating source.  *See Wilson v. Commissioner of Social Security*, 378 F.3d 541, 545 (6th Cir. 2004); 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) ("[w]e will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion").

The ALJ addressed these statements as follows:

> I assign little weight to the opinion statement from Keith Javery, DO, in exhibit 25F, which indicated that the claimant's impairments had lasted at least 12 months, that the conditions were permanent, and that he agreed with the opinion of Ms. Rounds in exhibit 23F.  For the same reasons Ms. Rounds opinion fails, Dr. Javery's opinion fails as well.
>
> I assign little weight to the opinion statement from Dr. Sigelko and Rebecca Hull, PAC, in exhibit 26F.  This statement provided a list of impairments (which it described as permanent and progressive) and indicated that this source is also in agreement with the opinion of exhibit 23F.  I assign little weight to exhibit 26F because the underlying statement is unsupported.
>
> I assign little weight to the statement of Robert Seledotis, DO, in exhibit 27F. This statement has no probative value other than to indicate Dr. Seledotis also is in agreement exhibit 23F.  The post-cervical surgery treatment is quite limited.  The objective findings, including MRI results, are not particularly impressive.
>
> Exhibit 23F is completely inconsistent with the medical evidence of record. The surgeon (Seledotis) indicated that the MRI after the surgery looked good.  There is only mild spondylosis and degenerative lumbar changes and only mild cervical radiculopathy.  There is a reduction of cervical spine movement; however, the extremities have generally normal range of motion and strength.  On this basis, I

>  conclude that the opinion statement in exhibit 23F is wholly inconsistent with the medical evidence of record; I reject exhibit 23F.

PageID.57-58.

The ALJ's decision is supported by substantial evidence. First, the ALJ properly rejected the underlying RFC evaluation performed by Ms. Rounds because it was not supported by the medical evidence. *See* discussion, *supra*.

Second, the Physician Reviews submitted by plaintiff are not opinions offered by treating physicians subject to the treating physician rule. "Medical opinions are statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2) and 416.927(a)(2).

Here, the treating physicians did not offer any opinions regarding plaintiff's condition. Rather, they were given the choice to agree or disagree with the opinions expressed by Ms. Rounds, a third-party who was not an acceptable medical source. To accomplish this, plaintiff's physicians filled out a one-page Physician Review which consisted of three questions. First, the doctor marked either "yes" or "no" to the statement, "Have the patient's impairments lasted or can they be expected to last at least 12 months?" Second, the doctor placed a check-mark in response to the following statement, "Prognosis: Based on my contact with the above-named patient, the condition(s) addressed in this report appear to be: __ Permanent __ Temporary __ Progressive __ Stable". Third, the doctor circled the word "agree" or "disagree" after the following statement, "On behalf of my patient, I have reviewed the RFC report along with the supportive documentation completed by

Barbara Rounds, OTR/L and (*Circle*) **agree/disagree** with the functional limitations as identified." *See* Physician Reviews at PageID.854, 856, 858.  The form also provided two spaces for the doctor to address plaintiff's condition.  One space allowed the doctor to "Identify clinical and diagnostic findings that support the recommended restrictions and/or affect the patient's ability to work," and the other space allowed the doctor to include "Comments/Modifications".  *Id.*

ALJs are not bound by conclusory statements of doctors, particularly where they appear on "check-box forms" and are unsupported by explanations citing detailed objective criteria and documentation.  "Many courts have cast doubt on the usefulness of these forms and agree that administrative law judges may properly give little weight to a treating physician's check-off form of functional limitations that did not cite clinical test results, observations, or other objective findings[.]" *Ellars v. Commissioner of Social Security*, 647 Fed. Appx 563, 566 (6th Cir. 2016) (internal quotation marks omitted).  In such cases, where the physician includes remarks on a check-off form such as noting that the "plaintiff's impairments consisted of severe peripheral vascular disease, coronary artery disease, COPD, depression and anxiety," these types of cryptic remarks are not sufficient to explain the doctor's findings.  *Id.* at 566-67.

Here, Dr. Javery indicated that he agreed with Ms. Rounds' functional limitations, but provided no narrative or comments.  PageID.854.  Dr. Sigelko indicated that she agreed with the functional limitations, and identified the clinical and diagnostic findings as " MRI - lumbar degenerative disc disease & radiculitis," "cervical => severe foraminal narrowing at C6-C7 causing chronic pain & weakness in upper extremities, frequent headaches depression and anxiety." PageID.856.  Finally, Dr. Seledotis did not circle "agree" or "disagree" with respect to the functional limitations.  PageID.858.  Rather, he identified plaintiff's clinical and diagnostic findings as lumbar

and cervical disc degeneration with associated back pain, leg pain, headache, neck and arm pain, and included a comment that he agreed with the functional capacity assessment. *Id.* Based on this record, the Physician Reviews were not sufficient to explain the doctor's findings. *Ellars*, 647 Fed. Appx at 566-67. The ALJ did not err by assigning little weight to the Physician Reviews. Accordingly, plaintiff's claim of error is denied.

### IV.  CONCLUSION

The ALJ's determination is supported by substantial evidence. The Commissioner's decision will be **AFFIRMED** pursuant to 42 U.S.C. § 405(g). A judgment consistent with this opinion will be issued forthwith.


Dated:  September 26, 2016            /s/ Ray Kent
                                      RAY KENT
                                      United States Magistrate Judge